UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

NATHANIEL FLOYD,

Plaintiff,

-against-

**MEMORANDUM & ORDER**

**13-CV-4963 (NGG)**

CAROLYN W. COLVIN,
Commissioner of Social Security

Defendant.
------------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Nathaniel Floyd brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c),

seeking judicial review of the Social Security Administration's (the "SSA") decision that he is

not disabled and therefore does not qualify for Social Security Disability and Supplemental

Security Income benefits. Plaintiff argues that the SSA made four errors in denying his

application for benefits: that it (1) incorrectly weighed the medical evidence; (2) erred in

assessing Plaintiff's credibility; (3) failed to develop the record; and (4) improperly relied on the

vocational expert's testimony. Defendant Carolyn W. Colvin, the Commissioner of Social

Security, has filed a motion, and Plaintiff has filed a cross motion, for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c). (See Def.'s Not. of Mot. (Dkt. 15); Pl.'s Not.

of Mot. (Dkt. 17).) For the reasons set forth below, the Commissioner's motion is DENIED,

Plaintiff's motion is GRANTED, and this case is REMANDED to the SSA for further

proceedings.

## I.    BACKGROUND

Plaintiff was born on September 9, 1962. (See Administrative Rec. ("Rec.") (Dkt. 8)

at 77.) He is a high school graduate. (Id.) He last worked as a rubber tire repairer for the New

York City Department of Sanitation from 1992 through March 2003. (Rec. at 202-03.) This position involved mounting and dismounting tires onto and off of trucks and frequently required Plaintiff to lift fifty pounds or more. (Id. at 89, 202-03) Plaintiff also worked at Fresh Kills Landfill in Staten Island following the September 11, 2001, World Trade Center attack, and was exposed to respiratory irritants from the World Trade Center. (Id. at 92, 286.) Plaintiff testified at a hearing before the SSA that in 2003, he quit his job at the New York City Department of Sanitation for personal reasons, not medical ones. (Id. at 91.) However, in a Disability Report dated March 20, 2010, Plaintiff stated that he stopped working in 2003 because of his "condition(s)." (Id. at 182.)

### A.     Medical Evidence

#### 1.     Dr. Jeffrey Tambor

Dr. Jeffrey Tambor is Plaintiff's primary care physician, and in treatment notes dated October 28, 2009, and February 28, 2010, he noted that Plaintiff had been using the following medications: Lovaza, Amlodipine, Simvastatin, Bebesipril, Ibuprofen, and Nexium. (See id. at 266-68.)

#### 2.     Dr. James Bruno and Dr. Frank Accera

Plaintiff receives treatment from Dr. James Bruno and Dr. Frank Accera, pulmonology specialists who practice medicine together. (See id. at 301.) From February 2009 through August 2010, Dr. Bruno's and Dr. Accera's notes consistently document that Plaintiff is a smoker and suffers from obstructive sleep apnea ("OSA"), chronic obstructive pulmonary disease ("COPD"), obesity, and gastroesophageal reflux disease ("GERD"). (See id. at 301-07, 315-34.) During a visit to Dr. Bruno on August 24, 2009, Plaintiff indicated that he was sleeping well due to continuous positive airway pressure ("CPAP") treatment for his OSA, had no new

2

complaints, and could ambulate without difficulty. (Id. at 307.) In an evaluation performed for the New York State Office of Temporary and Disability Assistance, dated June 22, 2010, Dr. Accera opined "as a specialist in pulmonary medicine," that Plaintiff's "respiratory-related limitation with respect to ability to do work-related physical activity is: SEVERE." (Id. at 302 (emphasis in original).)

### 3.   Dr. Cindy Resnick

Plaintiff visits podiatrist Dr. Cindy Resnick every three months for diabetic foot care. (See id. at 270.) In a report prepared for the New York State Office of Temporary and Disability Assistance, dated March 9, 2010, Dr. Resnick diagnosed Plaintiff with insulin dependent diabetes mellitus, as well as tinea pedis (athlete's foot), hammertoes, thick ingrown toenails without infection, and diabetic neuropathy. (Id. at 269.) In the report, Dr. Resnick opined that Plaintiff's ability to do work-related physical activity involving standing or walking has "[n]o limitation as far as his feet are concerned." (Id. at 275 (emphasis in original).)

### 4.   Dr. Nisha Aurora

Plaintiff was examined by Dr. Nisha Aurora of the World Trade Center Medical Monitoring and Treatment Effects Program. In notes taken during examinations held in June 2008, and February 2009, Dr. Aurora diagnosed Plaintiff with severe OSA. (See id. at 263, 374-75.) He also noted that Plaintiff had no cardiac arrhythmias, murmurs, or gallops; Plaintiff's lungs were clear; Plaintiff reported smoking one pack of cigarettes per day from the age of sixteen; and Plaintiff reported no restlessness of legs, cataplexy, excessive movement during sleep, or morning headaches. (Id. at 261-62.) In an evaluation prepared in February 2010, Dr. Aurora wrote that Plaintiff "[a]ppears to be in no respiratory discomfort," and that Plaintiff

reported that with CPAP treatment for his OSA, he "feels awake and alert" and "is no longer requiring a nap." (Id. at 399-400.)

### 5. Dr. Sunil Patel

Dr. Sunil Patel saw Plaintiff on October 20, 2010 for GERD. (See id. at 337.) He diagnosed Plaintiff with chronic GERD and advised Plaintiff to have a colonoscopy. (Id.)

### 6. Dr. Shahed Quyyumi

Plaintiff sees Dr. Shahed Quyyumi, an endocrinologist, for treatment of his diabetes. (See id. at 278-85, 341-61.) He saw Dr. Quyyumi several times between February 2010 and September 2011, and in notes from a February 19, 2010, visit, Dr. Quyyumi wrote that Plaintiff suffers from OSA and COPD. (Id. at 283.) Dr. Quyyumi prescribed Plaintiff medication for blood sugar management, and Plaintiff's blood glucose level during all of his visits to Dr. Quyyumi was within normal ranges, except for on September 16, 2011, when it was deemed high. (Id. at 280, 284-85, 345, 351.) In notes from a May 11, 2010, visit, Dr, Quyyumi indicated that Plaintiff complained of pain in his arms and shoulders. (Id. at 282.)

### 7. Dr. Chitoor Govindaraj

On June 3, 2010, Dr. Chitoor Govindaraj conducted a consultative examination of Plaintiff for the New York State Office of Temporary and Disability Assistance. (See id. at 286-89.) Plaintiff reported to Dr. Govindaraj that he did not smoke and did "a lot of walking." (Id. at 287.) He told Dr. Govindaraj that he had experienced pain in his right leg for two months, had been diagnosed with diabetes in 2009, and had had OSA for two years. (Id.) Dr. Govindaraj reported in the results of his examination that Plaintiff's chest was symmetrical; his lungs were resonant to percussion bilaterally; air entry was good bilaterally; there were no unusual sounds; and there were decreased sounds over the bases due to obesity. (Id. at 287-88.) Dr. Govindaraj

4

also noted that Plaintiff had normal gait and posture; did not require assistive devices; and had normal range of motion in the back and all extremities. (Id. at 288.) Dr. Govindaraj diagnosed a history of OSA, history of obesity, history of diabetes mellitus, history of hypertension, history of hyperlipidemia, history of 9/11 exposure, and history of allergic rhinitis. (Id. at 288-89.) Dr. Govindaraj further opined that Plaintiff's "[o]verall medical prognosis is good," and that Plaintiff "is medically currently stable for occupation." (Id.)

8.    Other Medical Evidence

Chest X-rays taken of Plaintiff at Mount Sinai Hospital on March 13, 2008, were within normal limits. (See id. at 265.) Chest X-rays taken on March 8, 2010, and June 25, 2010, while Plaintiff was under the care of Drs. Bruno and Accera, were described as normal, with no significant interval changes relative to the X-rays performed in 2008. (Id. at 303, 331.) A pulmonary function test performed on April 10, 2008, revealed best FEV1 values that were above the Listing-level requirements, both before and after the administration of medication.[1] (Id. at 264.)

**B.    Other Evidence**

1.    Plaintiff's Testimony

During his October 25, 2011, hearing before Administrative Law Judge Barry L. Williams (the "ALJ"), Plaintiff testified that after quitting his job at the New York City Sanitation Department in 2003, he applied for a job as a bus mechanic, but could not pass the physical exam. (See id. at 80.) He claimed that the reason for failing the physical was his OSA, and later testified that the reason was his breathing difficulties. (Id. at 80, 91.) Plaintiff reapplied for his previous job with the Sanitation Department, but was told that the position had

---

[1] FEV1 values represent the portion of an individual's vital capacity that he is able to expire in one second, and is used in the diagnosis of obstructive lung disease. See Tomasz Golczewski et al., A Mathematical Reason for FEV1/FVC Dependence on Age, 13 Respiratory Research 57 (2012).

been filled. (Id. at 91.) Plaintiff testified that his reasons for quitting the job at the Sanitation Department were "[f]amily, personal reasons. . . . [n]ot medical" (id.), but he wrote previously in a Disability Report that he stopped working "[b]ecause of my condition(s)" (id. at 182).

In a Function Report dated April 7, 2010, Plaintiff reported that he lives with family, and his sister-in-law prepares his meals, with the exception of a monthly meal that he prepares himself. (See id. at 194, 196.) Plaintiff reported that he feeds himself, bathes, and uses the toilet himself, but no longer cares for his hair or shaves. (Id. at 196.) He reported that he walks outside alone every day, uses public transportation, and goes to church weekly and doctor appointments every few months. (See id. at 197-99.) Plaintiff reported that he can walk for two blocks without stopping to rest. (Id. at 200.) In a Pain Questionnaire, also dated April 7, 2010, Plaintiff reported that he experiences dull pain in his right leg, which is brought on by "working." (Id. at 210-11.)

At the hearing before the ALJ, Plaintiff testified that he experiences shortness of breath and can walk only five yards before resting for two or three minutes and using an inhaler. (Id. at 79-80.) He stated that he has numbness in his feet once or twice per month, can stand or walk for ten minutes before his legs start to hurt, and can sit for twenty-to-thirty minutes before his back hurts. (Id. at 83-86.) When asked further about his leg and back pain, Plaintiff stated that he had been told that his right leg was a "wandering leg," and that his back pain is caused by sitting or eating too much. (Id. at 86.) Plaintiff testified that he sleeps with a CPAP every night to treat his OSA, but that it helped only "a little bit," and he still felt tired during the day. (Id. at 81.)

6

<u>Vocational Expert Denise Cordes</u>

Vocational expert Denise Cordes also testified during the hearing. The ALJ posed a hypothetical question to Ms. Cordes, describing an individual of Plaintiff's age, educational background, and work background, who could perform only light work, needed to avoid respiratory irritants and unprotected heights, and could occasionally balance, stoop, kneel, crawl, and climb stairs and ramps. (See <u>id.</u> at 96-98.) Ms. Cordes stated that such an individual could not perform Plaintiff's prior job as a tire repairer, but could perform the jobs of storage facility worker, optical lens matcher, and ticket taker. (<u>Id.</u> at 97.)

## II.   PROCEDURAL HISTORY

On March 9, 2010, Plaintiff filed an application for Social Security Disability Benefits, claiming that he had been disabled since March 10, 2003. (See <u>id.</u> at 159.) The SSA denied the application on June 15, 2010. (<u>Id.</u> at 111.) Plaintiff requested a hearing before an administrative law judge, and the ALJ held a hearing on October 25, 2011. (<u>Id.</u> at 117, 123.) On November 30, 2011, the ALJ issued a written decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act, and denying Plaintiff's application for Social Security Disability Benefits. (<u>Id.</u> at 64.) Plaintiff requested that the SSA Appeals Council review the ALJ's unfavorable decision, and the Appeals Council denied the request for review on July 10, 2013, upholding the ALJ's decision. (<u>Id.</u> at 1-6.)

On September 5, 2013, Plaintiff filed the instant action seeking judicial review of the SSA's decision pursuant to 42 U.S.C.§§ 405(g) and 1383(c). (See Compl. (Dkt. 1) ¶¶ 1-2.) The Commissioner filed her Answer, with a copy of the administrative record, on November 29, 2013. (See Ans. (Dkt. 9).) The Commissioner and Plaintiff have filed cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See

Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings (Dkt. 16); Mem. of Law in Opp'n to Def.'s Mot. and in Supp. of Pl.'s Cross-Mot. for J. on the Pleadings ("Pl. Mem.") (Dkt. 18).)

## III.   LEGAL STANDARD

### A.   Review of Final Determinations of the Social Security Administration

Under Rule 12(c), "a movant is entitled to judgment on the pleadings only if the movant establishes 'that no material issue of fact remains to be resolved and that [he] is entitled to judgment as a matter of law.'" Guzman v. Astrue, No. 09-CV-3928, 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (quoting Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990). "The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). Thus, as long as (1) the ALJ has applied the correct legal standard, and (2) the ALJ's findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

## B. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the Social Security Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Social Security Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Social Security Act. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In Dixon v. Shalala, the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in . . . the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the

9

residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995) (internal citations omitted).

The "burden is on the claimant to prove that he is disabled." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (citation and internal quotation marks omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner to "show there is other gainful work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id.

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in concluding that he was not disabled under the Social Security Act. He does not dispute the first three steps of the ALJ's five-step analysis: (1) that

10

Plaintiff has not engaged in substantial gainful activity since March 10, 2003; (2) that Plaintiff suffers from severe sleep apnea, COPD, diabetes, and obesity; and (3) that Plaintiff does not suffer from an impairment that meets the Listing of Impairments. (See Rec. at 57-58.)

At step four, the ALJ determined that Plaintiff had the residual functional capacity "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)" because he could

> lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk up to 6 hours out of an 8-hour workday with normal breaks, and can sit for up to 6 hours of an 8-hour workday with normal breaks. In addition, he can only occasionally climb ramps or stairs, but can never climb ladders, ropes or scaffolds. He can only occasionally balance, stoop, kneel, crouch, or crawl. He must avoid respiratory irritants (such as fumes, orders, dust and gases), and must avoid unprotected heights or unprotected machinery.

(Id. at 58-59.) Plaintiff argues that the ALJ committed three errors in his determination of Plaintiff's residual functional capacity at step four (and upon which the ALJ partially relied for his conclusion at step five). He asserts that the ALJ (1) incorrectly weighed the medical evidence; (2) erred in his assessment of Plaintiff's credibility; and (3) failed to develop the record. (See Pl. Mem. at 7-16.)

Plaintiff also argues that the ALJ erred at step five in determining that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Rec. at 63.) Plaintiff asserts that the ALJ improperly relied on the vocational expert's testimony in making this determination. (See Pl. Mem. at 17.)

## A.    Weighing of Medical Evidence

Plaintiff argues that the ALJ improperly weighed the medical evidence with respect to the step-four determination. Specifically, Plaintiff asserts that the ALJ improperly assigned greater weight to the opinion of Dr. Govindaraj than to the opinions of Plaintiff's treating physicians,

incorrectly evaluated Dr. Resnick's opinion, and erroneously failed to consider the reports of Dr. Quyyumi and Dr. Tambor. The court agrees that the ALJ's assessment of the medical evidence was flawed, and that he did not assign appropriate weight to the medical opinions.

1.    Treating Physician Rule

Under the SSA's regulations, "a treating physician's report is generally given more weight than other reports." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008). The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c). On the other hand, "[w]hen other substantial evidence in the record"—such as other medical opinions—"conflicts with the treating physician's opinion, that opinion will not be deemed controlling." Snell, 177 F.3d at 133. In addition, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and are, therefore, never given controlling weight. Id. (internal quotation marks omitted).

Even where an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the opinion. See 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must assess "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the

opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, he or she must "appl[y] the substance of the treating physician rule." Halloran v. Bernhart, 362 F.3d 28, 32 (2d Cir. 2004). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" or when the court "encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

### 2. Weight Given to Opinions of Dr. Govindaraj and Dr. Accera

Plaintiff argues that the ALJ gave too much weight to the opinion of Dr. Govindaraj, and the court agrees. The ALJ assigned "significant weight" to Dr. Govindaraj's opinion. (Rec. at 62.) It is undisputed that Dr. Govindaraj is not a treating physician, but rather, is the SSA's medical examiner who met with Plaintiff only once. Similarly, it is undisputed that the other physicians—Drs. Tambor, Bruno, Accera, Resnick, Aurora, and Quyyumi—do qualify as treating physicians, the opinions of whom are given controlling weight unless there is conflicting evidence. Dr. Govindaraj's report directly contradicts that of Dr. Accera; Dr. Govindaraj opined that Plaintiff "is medically currently stable for occupation" (id. at 288), while Dr. Accera wrote that Plaintiff's "respiratory-related limitation with respect to ability to do work-related physical activity is: SEVERE" (id. at 302 (emphasis in original)). The other treating physicians did not specifically report on Plaintiff's work-related physical abilities,[2] but they did diagnose him with severe health impairments. Given the conflicting medical opinions, Dr. Accera's opinion was

---

[2] Dr. Resnick did submit a statement regarding Plaintiff's work-related capabilities, but her statement has limited applicability. See infra Part IV.A.3.

not entitled to controlling weight, despite the fact that he is a treating physician. However, Dr. Govindaraj's opinion also was not entitled to controlling weight.

Thus, the question for the court is whether the ALJ provided "good reasons" for discounting Dr. Accera's opinion as a treating physician and assigning "significant weight" to Dr. Govindaraj's opinion. The ALJ stated that he rejected Dr. Accera's statement that Plaintiff has a severe respiratory-related limitation because it "is not a sufficiently specific function-by-function assessment of the claimant's ability to do work-related activities," and "there is no evidence . . . that [Plaintiff's] condition would prevent him from performing all types of work." (Id. at 62.) The ALJ also wrote that "no treating or examining physician described the claimant as having disabling limitations." (Id.) However, none of the treating physicians described Plaintiff as capable of employment either. Furthermore, the ALJ did not apply a single factor that the regulations provide for determining the weight to give a non-controlling opinion of a treating physician. See 20 C.F.R. § 494.1527(c)(2)-(6). It is not enough for the ALJ to simply say that a treating physician's findings are unsupported by the record; the ALJ must provide "reasons which explain that inconsistency with the[ ] other parts [of the record]." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004).

Moreover, the ALJ did not adequately explain why he found the opinion of Dr. Govindaraj—a non-treating physician who examined Plaintiff only once—to be so convincing and deserving of significant weight. Cf. Pogozelski, 2004 WL 1146059, at *13 (holding that the ALJ erred in according "more than limited weight" to opinion of physician who had examined plaintiff only once); Crespo v. Apfel, No. 97-CV-4777 (MGC), 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17, 1999) (stating that a "consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or

review of the claimant's medical history, and at best, only give a glimpse of the claimant on a single day"). In support of his assignment of significant weight to Dr. Govindaraj, the ALJ did note that Dr. Govindaraj's report is "consistent with the opinion of Dr. Resnick, the claimant's podiatrist." (Rec. at 62.) However, Dr. Resnick's opinion was not on point and did not support Dr. Govindaraj's opinion.[3] In short, the ALJ provided nothing close to "good reasons" for the significant weight he gave to Dr. Govindaraj's opinion and the minimal weight he gave to Dr. Accera's opinion.

### 3. Weight Given to Dr. Resnick's Opinion

Plaintiff also argues that the ALJ incorrectly weighed the medical evidence in his evaluation of Dr. Resnick's opinion. The court agrees. It is undisputed that Dr. Resnick is a treating physician. However, Dr. Resnick is a podiatrist and only treats Plaintiff's diabetic foot. (See id. at 270.) She does not specialize in pulmonology and has never treated Plaintiff for his OSA or COPD. (Id.) In fact, in her reports, Dr. Resnick diagnosed Plaintiff only with foot and diabetes-related conditions, and she does not appear to have examined Plaintiff's respiratory functions. (Id. at 269.) Dr. Resnick opined that Plaintiff's ability to do work-related physical activity involving standing or walking has "[n]o limitation as far as his feet are concerned." (Id. at 275 (emphasis in original).) The ALJ interpreted Dr. Resnick's report as supporting a general conclusion that Plaintiff's "condition [is not] particularly debilitating" and that Plaintiff has "no work-related limitations." (Id. at 61.) However, it is clear from Dr. Resnick's report that she intended to refer only to Plaintiff's diabetic foot, not his COPD or OSA. Not only did Dr. Resnick specifically write "as far as his feet are concerned," but regarding other areas of the body, she wrote "N/A." (Id. at 275.) As such, it was inappropriate for the ALJ to extend

---

[3] See infra Part IV.A.3.

Dr. Resnick's opinion about Plaintiff's diabetic foot to support a conclusion that Plaintiff has no limitations due to his COPD and OSA. Dr. Resnick's report is only consistent with that of Dr. Govindaraj to the extent that Dr. Govindaraj reported on Plaintiff's diabetic foot.

4.    Weight Given to Opinions of Dr. Quyyumi and Dr. Tambor

Plaintiff also challenges the ALJ's evaluation of the medical evidence for failure to consider the reports of Drs. Quyyumi and Tambor. However, Dr. Tambor is only Plaintiff's primary care physician and is not a specialist, and he did not treat Plaintiff for any of the conditions that the ALJ labeled "severe." His notes mention the medications that Plaintiff took, but do not provide information relevant to the ALJ's disability determination.[4]

Dr. Quyyumi, however, is an endocrinology and diabetes specialist, and his medical reports are relevant and must be considered. The ALJ did consider Dr. Quyyumi's reports and test results, although he did not mention the doctor by name. The ALJ discussed the blood test results that were in medical records from Dr. Quyyumi and were within normal limits. (See id. at 61 (citing blood tests from February 2010 and September 2011).) Apart from these test results, Dr. Quyyumi did not provide other relevant medical evidence or opinions. Dr. Quyyumi's notes mention that Plaintiff "reports pain in both arms and shoulders," but that is a description of Plaintiff's subjective symptoms, not of the physician's diagnosis or conclusions.

*    *    *

Thus, the court finds that the ALJ improperly weighed the medical evidence before him. He failed to provide "good reasons" for the lack of weight he gave to Dr. Accera's opinion or for the significant weight he gave to Dr. Govindaraj's opinion, and he misconstrued Dr. Resnick's

---

[4] While Dr. Tambor's notes do not contain information relevant to the disability determination, the ALJ should have followed up with Dr. Tambor to obtain such information, which Dr. Tambor almost certainly could have provided as a treating physician who likely reviewed the clinical findings of the specialists with whom Plaintiff consulted. See infra Part IV.B.

opinion. As such, the court must remand the case for a proper evaluation of the medical opinions.

## B. Development of the Record

Plaintiff also argues that the ALJ failed to adequately develop the record with respect to the medical evidence. The court agrees. In applying the treating physician rule, the ALJ has an "affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Pogozelski, 2004 WL 1146059, at *10. This well-established rule requires "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceedings." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks and alterations omitted); see also Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004) ("[I]t is the ALJ's duty to investigate and develop the facts and develop arguments both for and against the granting of benefits."). "Where there are gaps in the administrative record . . . remand[ ] to the Commissioner for further development of the evidence" is appropriate. Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal quotation marks and alterations omitted).

In Rosa, the ALJ failed to obtain adequate information from the plaintiff's treating physician and several other doctors regarding the extent of plaintiff's injuries and residual functional capacity, and consequently reached unsupported conclusions. See id. at 83. Similarly, the administrative record here, in addition to containing conflicting medical evidence, is insufficient and lacks adequate information from a number of Plaintiff's treating doctors. The ALJ should have investigated further to obtain the information necessary for his determination of whether Plaintiff is disabled.

17

Given that the opinions of Dr. Accera and Dr. Govindaraj directly conflict, before assigning significant weight to Dr. Govindaraj (the consultative examiner), the ALJ was required, at the very least, to seek corroborative medical evidence. Furthermore, the ALJ even noted deficiencies in the record and cited these deficiencies as justification for denying Plaintiff's claim, instead of obtaining more information. Specifically, regarding records from Dr. Accera, the ALJ noted that "[t]here are only a few handwritten progress notes," and that the statement concerning Plaintiff's work-related limitations "is not a sufficiently specific function-by-function assessment of the claimant's ability to do work-related activities." (Rec. at 60, 62.) If the ALJ believed that Dr. Accera's statement was not specific enough to allow the ALJ to determine what the doctor believed Plaintiff's residual functional capacity to be, he had a duty to inquire further and request an explanation of the statement. It was not appropriate to merely discredit the opinion.

In addition, the ALJ failed to seek the opinions of the several other treating physicians who examined Plaintiff. "[D]istrict courts within this Circuit have routinely recognized that ALJs have an affirmative duty to request medical source statements from a plaintiff's treating sources in order to develop the record, regardless of whether a plaintiff's medical record otherwise appears complete." Pettaway v. Colvin, No. 12-CV-2914 (NGG), 2014 WL 2526617, at *5 (E.D.N.Y. June 4, 2014) (internal quotation marks omitted).[5] Dr. Tambor's notes in the administrative record do not provide a statement regarding Plaintiff's physical capabilities, and the ALJ should have asked Dr. Tambor whether he had formulated such an opinion. See id.; see also Meadors v. Astrue, 370 F. App'x 179, 182 (2d Cir. 2010) (summary order) (noting that a treating primary care physician, though not a specialist, may "have had the opportunity to review

---

[5] This conclusion is grounded in the regulations themselves, which provide that the Commissioner will make every reasonable effort to obtain medical reports from a claimant's medical sources, including a statement about the claimant's capabilities in light of his impairments. See 20 C.F.R. § 404.1512(b).

the clinical findings and opinions of specialists with whom [plaintiff] did consult," in which case his opinion merits more significant weight). Similarly, Dr. Quyyumi, a treating physician who treated Plaintiff for diabetes, did not provide a statement regarding the impact of Plaintiff's physical impairments on work-related activities. The ALJ had a duty to request a statement from Dr. Quyyumi before making his determination. Lastly, the ALJ should have sought a statement from Dr. Aurora, who treated Plaintiff for respiratory problems at least three times.

Thus, the ALJ reached his disability determination on an incomplete record. "Because further findings would so plainly help to assure the proper disposition of [Plaintiff's] claim," remand is appropriate in this case. Rosa, 168 F.3d at 83.

### C. Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective accounts of his pain and symptoms. Considering its resolution of Plaintiff's other arguments, the court need not reach this argument at this time.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not credible to the extent that they are inconsistent with the [] residual functional capacity," and also stated that Plaintiff's descriptions of his symptoms "are not fully credible, as they are quite far removed from the findings of all the doctors set forth." (Rec. at 59-60, 62.) However, the ALJ's determination that Plaintiff's statements were inconsistent with the medical evidence was tainted by the ALJ's failure to properly evaluate the opinions of Plaintiff's treating physicians. This failure necessarily affected how the ALJ viewed the totality of the medical evidence, and consequently, his determination of whether Plaintiff's symptoms were substantiated by objective medical evidence. On remand, the ALJ is directed to consider Plaintiff's subjective complaints in light of the ALJ's revised evaluation of the medical

opinions. See Sutherland, 322 F. Supp. 2d at 291 (declining to consider plaintiff's argument that the ALJ improperly assessed her complaints because the ALJ's failure to properly weigh the medical evidence "affect[ed] consideration of the ALJ's treatment of the plaintiff's subjective complaints").

### D.     Reliance on the Vocational Expert

Finally, Plaintiff argues that the ALJ's reliance on the vocational expert's testimony was flawed. After assessing Plaintiff's residual functional capacity, the ALJ concluded, at step five of the analysis, that "[b]ased on the testimony of the vocational expert, . . . considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Rec. at 64.) The ALJ's conclusion was based on the vocational expert's testimony that a hypothetical individual of Plaintiff's age and background with a residual functional capacity to perform light work, would be capable of employment as a storage facility worker, optical lens matcher, and ticket taker. As discussed above, the residual functional capacity that the ALJ posed to the vocational expert was tainted by the ALJ's improper assessment of the medical evidence and failure to develop the record. On remand, the ALJ is directed to reconsider Plaintiff's residual functional capacity before consulting a vocational expert.

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, Plaintiff's cross-motion for judgment on the pleadings is GRANTED, and this case is REMANDED to the SSA for further development of the record, a proper evaluation of the

medical opinions, and a re-evaluation of Plaintiff's subjective complaints in light of all the

medical evidence.

     SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     May _5_, 2015

NICHOLAS G. GARAUFIS
United States District Judge